UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE CALHOUN,

          Plaintiff,

vs.

LAVERN HILL, DIANA MARBLE,
JULIE VAN SETTERS, OTF, and
CORRECTIONAL MEDICAL
SERVICE, INC.,

          Defendants.

_____/

Case No. 07-11613

David M. Lawson
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTIONS TO
## DISMISS AND/OR FOR SUMMARY JUDGMENT

## I.    PROCEDURAL HISTORY

Plaintiff, Willie Calhoun, is a prisoner in the custody of the State of

Michigan.  (Dkt. 1).  Pursuant to 42 U.S.C. § 1983, plaintiff filed a complaint

against defendants on April 10, 2007, alleging that they violated his constitutional

rights.  *Id*.  Plaintiff sought to proceed under the provisions of 28 U.S.C.

§ 1915(a), which allows a party to file a complaint without payment of customary

court fees.  (Dkt. 2).  On April 16, 2007, plaintiff's application to proceed *in forma*

*pauperis* was granted.  (Dkt. 3).  District Judge David M. Lawson referred this

matter to Magistrate Judge Paul J. Komives for all pre-trial matters on October 3, 2007. (Dkt. 20). On January 14, 2008, this matter was reassigned to the undersigned. (Dkt. 26).

Defendant Correctional Medical Services, Inc. and its employee (Diana Marble) (the CMS defendants) filed a motion to dismiss, and in the alternative, for summary judgment, on October 2, 2007. (Dkt. 18). Plaintiff filed a response on November 13, 2007 and the CMS defendants filed a reply on November 14, 2007. (Dkt. 25, 24). The defendants employed by the Michigan Department of Corrections (the MDOC defendants) filed a motion to dismiss, and in the alternative, for summary judgment, on November 7, 2007. (Dkt. 23). The Court ordered plaintiff to respond to the MDOC defendants' motion by April 21, 2008. (Dkt. 29). Plaintiff filed a response on April 21, 2008. (Dkt. 30).

On reviewing the parties' submissions, the Court observed that a page of plaintiff's complaint was missing. On May 1, 2008, the Court ordered plaintiff to resubmit the missing page of his complaint by May 19, 2008. (Dkt. 31). On May 30, 2008, the Court received correspondence from plaintiff in which he explained that he did not have a copy of the missing page, but provided a copy of another grievance relating to the missing page instead. (Dkt. 32). In order to give plaintiff another opportunity to provide the Court with a complete complaint describing all

his allegations, the Court ordered plaintiff to recreate the missing page of his complaint and submit it to the Court by June 23, 2008. (Dkt. 33, 34). Plaintiff did not do so. Instead, on July 25, 2008, plaintiff forwarded a copy of his three-step grievance pertaining to the missing page for filing with the Court. (Dkt. 36). Defendants' motions are now ready for report and recommendation.

For the reasons for forth below, it is **RECOMMENDED** that all defendants' motions to dismiss and/or for summary judgment on the issue of exhaustion be **DENIED**; that defendant CMS's motion to dismiss for failure to state a claim be **GRANTED**; that defendant Marble's motion to dismiss for failure to state a claim be **DENIED**; that defendant Hill's motion to dismiss for failure to state a claim be **DENIED**; that defendant Van Setter's motion to dismiss for failure to state a claim be **GRANTED**; and that plaintiff should be permitted an opportunity to **AMEND** his complaint as to defendant Van Setters.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's Complaint

Plaintiff claims that, while in custody, on April 18, 2006, one of the fingers on his left hand was shattered. (Dkt. 1, p. 5). Plaintiff was sent to Detroit Receiving Hospital, where an x-ray was performed and the treating physician

ordered that his finger be splinted and also prescribed pain medication. *Id*. On

April 19, 2006, plaintiff was seen at the MDOC prisoner health care clinic. He

was told that his pain medication had been ordered, but he never received any pain

medication. *Id*. Plaintiff requested that defendant Hill call the prison health care

clinic about his pain medication, but never received any response. *Id*. Plaintiff

was transferred to another correctional facility and again demanded pain

medication and that his shattered finger be repaired. *Id*. Plaintiff claims that, on

August 3, 2006, he was seen by a nurse practitioner who told him that, despite the

referral for surgery, CMS did not approve the funds for plaintiff's surgery. *Id*.;

Exs. A-K.

Plaintiff's complaint goes on to allege that he was treated differently from

other prisoners who received care, that as a result of defendants' deliberate

indifference, he now has a permanent deformity that cannot be repaired surgically

and that he is in constant pain. (Dkt. 1, p. 6). Finally, plaintiff asserts that he filed

two separate grievances, one at each correctional facility at which he was housed,

and has exhausted his administrative remedies. *Id*.

B.    MDOC Grievance Policy Directive

In conjunction with their dispositive motion, the MDOC defendants

produced a copy of the applicable MDOC policy directive that sets forth the

grievance procedures in effect at the time plaintiff submitted his grievances. (Dkt. 23, Ex. D (MDOC Policy Directive 03.02.130, eff. 12/19/03)); *see also, Rusiecki v. Trombley*, 2008 WL 192284, *4 n. 2 (E.D. Mich. 2008) (12/19/03 MDOC Policy Directive 03.02.130 in effect until superseded on 3/5/07). The MDOC grievance procedure explains that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant." (Dkt. 23, Ex. D, p. 1). As explained in the MDOC defendants' supporting brief, the grievance procedure also requires that the information provided "shall be limited to the facts involving the issue being grieved (i.e., who, what when, where, why, how)" and that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included." (Dkt. 23, Ex. D, p. 4, § T). Grievants are encouraged, however, to limit the information in the grievance form and to state the issue briefly. *Id.*

Within five days of attempting to resolve a dispute with staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator designated for the facility. (Dkt. 23, Ex. D, § Y, p. 5). And, if the merits of the grievance are addressed, the grievant must be interviewed in order to "explain the grievance more completely" and to enable the respondent to "gather any additional information needed to respond to the grievance." (Dkt. 23, Ex. D, pp. 5-6, §§ Y,

AA).  If the grievant is not interviewed, the reason must be included in the written response to the grievance.  (Dkt. 23, Ex. D, p. 5, § Y).  In response to the Step I grievance, the respondent must identify all policies, rules, or procedures that are related to the issue or conduct grieved.  (Dkt. 23, Ex. D, p. 6, § BB).  At Step I, the Grievance Coordinator "shall ensure that a thorough investigation was completed for each Step I grievance accepted" and that the response was reviewed by the appropriate supervisor.  (Dkt. 23, Ex. D, p. 5, § CC).

If a grievant is not satisfied with the Step I response or does not receive a timely response, he may request an appeal of the Step I grievance to Step II.  (Dkt. 23, Ex. D, p. 5, § DD).  If the Grievance Coordinator determines that the Step II grievance should be accepted, he must then assign an appropriate respondent.  *Id*. The MDOC grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance.  (Dkt. 23, Ex. D, p. 5, § FF).  For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. *Id*.  The Grievance Coordinator shall then ensure that "any additional investigation was completed as necessary for each Step II grievance accepted...."  (Dkt. 23, Ex. D, p. 6, § GG).

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Prisoner Affairs Section. (Dkt. 23, Ex. D, p. 7, § HH). The Prisoner Affairs Section is the respondent for a Step III grievance on behalf of the MDOC Director. (Dkt. 23, Ex. D, p. 7, § II). If a Step III grievance involves medical care or treatment, the Prison Affairs Section must forward any such grievance to the Bureau of Health Care Services (BHCS), who shall ensure that the grievance is investigated and a timely response provided. *Id*. The Manager of the Prisoner Affairs Section shall ensure that any additional investigation is completed as necessary for Step III. *Id*.

The MDOC Policy Directive also explains that a grievance *may*[1] be rejected if it is: (1) vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of another grievance already filed by that grievant; (2) the grievant is on modified access and has filed a grievance in violation of those applicable procedures; (3) the grievant did not attempt to resolve the issue with the staff member involved prior to filing of the grievance unless prevented from doing so

---

[1] A grievance coordinator *must* reject grievances (1) that are jointly filed by two or more prisoners or identical individual grievances filed by multiple prisoners as an organized protest, (2) which raise certain non-grievable issues, and (3) that use profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance. (Dkt. 23, Ex. D, pp. 2-3, §§ F, G).

by circumstances beyond the grievant's control; or (4) the grievance is filed in an untimely matter, although, a grievance shall not be rejected as untimely if there is a valid reason for the delay.  (Dkt. 23, Ex. D, p. 3, § G).

B.     Plaintiff's Grievances

According to plaintiff's complaint, two grievances are at issue in this case. The first is NRF 06-050570-12F and the second is OTF 06-0800561-121.  (Dkt. 1, p. 7).  On May 11, 2006, plaintiff filed a grievance NRF 06-050570-12F while he was housed at the Mound Road Correctional Facility (NRF) because he had not received his pain medication prescribed after the April 18, 2006 injury.  (Dkt. 18, Ex. E).  In response to his Step I grievance, on June 27, 2006, plaintiff was informed that the "pain medication prescribed by an outside physician is a recommendation only.  The doctor at the facility has the right to prescribe other medication."  *Id*.  Plaintiff filed a Step II grievance on June 22, 2006, stating that even if the facility physician can prescribe another medication, he has yet to receive any medication and his condition was "obvious."  *Id*.  The Step II grievance response, dated August 15, 2006, states that because plaintiff was given Motrin on August 2, 2006, the evidence did not support plaintiff's "charge of not receiving medication."  *Id*.  The response also indicated that plaintiff's grievance was "granted" and that "efforts are being made to correct this issue so it will not

occur again in the future." *Id*. On August 24, 2006, sometime after plaintiff was transferred to another facility (OTF), he appealed this grievance to Step III, stating that the health care provider ignored his medical "kites,"[2] failed to provide any pain medication to him, and failed to take measures to correct the deformity caused by the fracture. *Id*. The Step III response concluded that no further relief could be provided:

> As noted in Step I, outside physicians make recommendations for care. The facility MSP determines what care is necessary to meet the inmate's needs. In this particular [case], the MSP accepted the recommendation of the off site physician, and ordered the medication. There was an administrative difficulty with the pharmacy and the [medication] order was not filed. The matter was rectified and administrative action was taken to ensure that this does not happen in the future. No further relief can be provided.

*Id*.

On August 23, 2006, plaintiff initiated a second grievance after he was at OTF. (Dkt. 18, Ex. F). Plaintiff was seen by the nurse practitioner at OTF regarding the finger fracture. According to plaintiff, the nurse practitioner sent a

---

[2] A "kite" is a written informal complaint or request submitted by a prisoner. Plaintiff attached medical kites dated September 13, 2006, October 25, 2006, and December 11, 2006, to his complaint regarding his symptoms, his restrictions, and the appointment with the orthopedic specialist. (Dkt. 1, Exs. A-K).

referral to CMS so that plaintiff could be seen by a surgeon. He was informed that CMS denied the referral. He further states that "in my view a person with ordinary intelligence seeing the finger being in [sic] a 65 degree angle from the joint would think there is a serious need to have this fractured finger repaired." *Id*. The response to the Step I grievance, dated September 6, 2006, indicated that an appointment with an orthopedic specialist was scheduled. *Id*. On September 17, 2006, plaintiff filed a Step II grievance "based on the Supreme Court ruling that deliberate indifference to serious medical needs of prisoners is cruel and unusual punishment." *Id*. The Step II response (authored by defendant Van Setters), which was returned to plaintiff October 27, 2006, stated that plaintiff was evaluated by an orthopedic surgeon on September 27, 2006, who recommended surgery to repair plaintiff's deformed finger. *Id*.

Plaintiff filed a Step III grievance stating that the surgery was never performed. The date that he filed Step III is not entirely clear, but there are date stamps on the document submitted by the MDOC defendants suggesting that it was received on November 2, 2006 or December 4, 2006. *Id*. The Step III response was prepared on May 30, 2007 and approved on June 21, 2007. It states that plaintiff "has been receiving and will continue to receive all care medically indicated to meet his needs." *Id*.

C.    CMS Defendants' Motion To Dismiss or for Summary Judgment

The CMS defendants argue that plaintiff failed to exhaust his administrative remedies because he did not follow the MDOC grievance procedure in several respects. They suggest that, for grievance NRF0605057012F, he failed to comply with the grievance policy requirement that an inmate try to resolve grievable issues within two business days and then submit their grievance within five business days of trying to resolve the issue. (Dkt. 18, p. 6). The CMS defendants point out that the date of the incident was April 18, 2006, but plaintiff did not submit this grievance until May 11, 2006. *Id*. The CMS defendants assert that grievance NRF0605057012F is deficient because it does not name CMS or defendant Marble, in accordance with the MDOC grievance procedure. Defendant Marble also argues that plaintiff failed to exhaust his administrative remedies with respect to grievance OTF06080056112I, because she is not named in that grievance either. *Id*. at 9.

Next, the CMS defendants assert that plaintiff's complaint fails to state a claim for deliberate indifference to a serious medical need. (Dkt. 18, p. 10). They argue that, because plaintiff received treatment for his injury, his claim is really just a difference in opinion about the quality of care provided, which is insufficient to establish a constitutional violation. *Id*. Finally, CMS argues that,

even if an employee acted inappropriately, it is not liable under a *respondeat superior* theory and plaintiff alleges no policy, pattern, or practice that caused a violation of his constitutional rights. *Id*. at 11.

D.   Plaintiff's Response and CMS Defendants' Reply

Plaintiff argues that his exhaustion of his administrative remedies is plainly evident from the documentation. (Dkt. 25, p. 2; Exs. A-K). Plaintiff also argues that deliberate indifference is also plainly evident from his grievance, which alleges "torture" and the need to correct his "deformity without delay." *Id*. Plaintiff does not specifically address CMS's assertion that he alleges no pattern or practice claim. Rather, plaintiff suggests that this argument is merely a "re-phrasing" of CMS's other arguments and that he states a claim because he tried to obtain appropriate and timely treatment of his injured finger. *Id*. at 2.

In reply, the CMS defendants point out that plaintiff fails to provide any legal argument to rebut the bases of their motion to dismiss and/or for summary judgment. (Dkt. 24, p. 1). Thus, they suggest that plaintiff has not made the necessary factual basis for his claim in the pleadings, and dismissal or summary judgment pursuant to Rule 12(b)(6) or Rule 56 is appropriate. *Id*. at 3.

E.    MDOC Defendants' Motion to Dismiss or for Summary Judgment

The MDOC defendants first argue that plaintiff fails to state a claim for deliberate indifference because he was seen by several physicians and an orthopedic specialist. (Dkt. 23, pp. 3-5). Plaintiff merely complains about an administrative mistake that resulted in his pain medication being delayed, but this error was corrected. *Id*. at 4. The MDOC defendants also suggest that "any pain suffered by Plaintiff because of the lack of Motrin was a *de minimis* injury and does not rise to the level of being a constitutional violation." *Id*. at 5. Finally, the MDOC defendants point out that neither defendant Hill nor defendant Van Setters were personally involved in his care or the delay in receiving pain medication. *Id*. at 4-5.

Next, the MDOC defendants, like the CMS defendants, argue that plaintiff failed to exhaust his administrative remedies. (Dkt. 23, pp. 5-6). The MDOC defendants suggest that plaintiff did not properly exhaust his administrative remedies because he failed to name all persons involved in his grievance. *Id*. at 5. The MDOC defendants argue that they should not be required to reject a grievance on this basis in order to assert this defense in a lawsuit:

> Because only the prisoner knows the names of those he
> wants to sue, only the prisoner can determine whether he
> has listed all relevant parties. The MDOC cannot read

> prisoners' minds, so grievances cannot be rejected for failure to list all relevant parties. Failure to reject grievances for not listing all parties being sued is not an endorsement of the grievance's procedural or substantive correctness.

*Id*. at 6. Accordingly, since defendant Van Setters is not named in the grievance, no claim against her has been exhausted. *Id*. And, because no wrongdoing by defendant Hill is alleged in the grievance, it "does not exhaust any claims against Hill." *Id*.

Finally, the MDOC defendants argue that they are entitled to summary judgment on the basis of both Eleventh Amendment and qualified immunity. (Dkt. 23, pp. 7-8). They point out that a "suit against a state employee in his official capacity is tantamount to a suit against the state itself and must be dismissed on the basis of Eleventh Amendment immunity." *Id*. at 7. Since the MDOC defendants are employees of the State of Michigan, and the State has not consented to suit, they "enjoy Eleventh Amendment immunity in their official capacities." *Id*.

Additionally, the MDOC defendants suggest that, if plaintiff is suing them in their individual capacity, they are entitled to qualified immunity. The MDOC defendants contend that they are entitled to such immunity because plaintiff has not shown that his constitutional rights have been violated and because the MDOC

defendants did not act unreasonably where defendant Hill forwarded plaintiff's inquiry to health care, and defendant Van Setters only responded to a Step II grievance. *Id*. at 8.

F.    Plaintiff's Response

Plaintiff asserts that the MDOC defendants are not entitled to qualified immunity because the decision to deny his pain medication and allow him to suffer excruciating pain was cruel and unusual punishment. (Dkt. 30, p. 2). Plaintiff suggests that it has been apparent since 1976 that the Eighth Amendment is violated when prison officials are deliberately indifferent to a serious medical need. *Id*. Further, plaintiff contends that the injury to his finger is undisputed and that a "reasonable person could easily deduce that such an injury would be accompanied by excruciating pain." *Id*. at 3. Thus, any reasonable prison official would have known that the unnecessary infliction of pain violates the Constitution. *Id*.

Plaintiff also disputes the MDOC defendants exhaustion defense. (Dkt. 30, pp. 3-4). He states that he named defendant Van Setters as soon as he learned her name. He further suggests that, if the prison does not provide a means for a prisoner to satisfy the requirement to name all those involved, then the procedure is either unavailable or inadequate. Thus, plaintiff should not be required to

follow an inadequate procedure when the PLRA does not require the naming of all "specific defendants." *Id*. at 4.

## III.  DISCUSSION

### A.  Standard of Review

#### 1.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly*, 127 S.Ct. at 1964-65 (citations and quotation marks omitted).

And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

true." *Id.*, quoting, *Twombly*, at 1965 (internal citation and quotation marks omitted); *see also* League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

*Twombly* also referred to "plausibility" as the measure of pleading sufficiency, stating that allegations must "nudge[ ] ... claims across the line from conceivable to plausible" to survive a motion to dismiss, but cautioned that it was not adopting or applying a "heightened pleading standard." Id. at 1974.  As one district court recently observed, the "plausibility" standard has caused some confusion and uncertainty in the federal courts.  Interspan Distribution Corp. v. Liberty Ins. Underwriters, Inc., 2008 WL 905354, *8 (S.D. Tex. 2008). The Third Circuit concluded that it is related to the requirement of a Rule 8 "showing," which only requires notice of a claim and its grounds, as opposed to a pleader's bare averment that he wants relief and is entitled to it.  *Interspan*, at *8, citing, Phillips v. Allegheny Co., 515 F.3d 224, 234 (3d Cir. 2008) (internal citations and quotation marks omitted).  "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the

required element[]." *Phillips*, 515 F.3d 224 at 234. The Second Circuit has summarized *Twombly* as endorsing "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Interspan*, at *8, quoting, *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007).

The Sixth Circuit recently recognized that in *Erickson v. Pardus*, — U.S. —, 127 S.Ct. 2197 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496, 503 n. 6 (6th Cir. 2008) (internal citations and quotation marks omitted), citing, *Iqbal*, 490 F.3d at 157-158. The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). Such is not the case here. Thus, when applying *Twombly*, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992);

*Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed

"from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to

"liberally construe" the *pro se* complaint at issue.).

### 2.  Summary judgment

Summary judgment is proper where no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.

56(c).  In considering a motion for summary judgment, the evidence and all

reasonable inferences must be construed in favor of the nonmoving party.  *Tanner

v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006).  "[A] party seeking

summary judgment always bears the initial responsibility of informing the district

court of the basis for [his] motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue

of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.  Exhaustion

#### 1.  Burden of proof

Recently, the United States Supreme Court decided *Jones v. Bock*, in which

it held that "exhaustion is an affirmative defense, and prisoners are not required to

specifically plead or demonstrate exhaustion in their complaints." *Id.* at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id.* Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if plaintiff complied with the MDOC grievance procedure and defendant bears the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

     2.    Purpose of exhaustion requirement.

    The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. The Supreme Court also observed that

"[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in *Jones* was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures.[3] As observed in *Jones*, the primary purpose of a grievance is to alert

---

[3] In its discussion of the former MDOC policy, which did not require prisoners to name particular persons in a grievance, the Supreme Court noted that

prison officials of a particular problem, "not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 127 S.Ct. at 923, quoting, *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004); *see also*, *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."). As such, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." *Jones*, 127 S.Ct. at 923.

       3.    Plaintiff sufficiently exhausted his administrative remedies.

As all defendants emphasize, the 2000 MDOC Policy Directive at issue in *Jones* does not contain the requirements that a grievance "shall be limited to the

---

"the MDOC grievance form does not require a prisoner to identify a particular responsible party, and the respondent is not necessarily the allegedly culpable prison official, but rather an administrative official designated in the policy to respond to particular types of grievances at different levels." *Jones*, 127 S.Ct. at 922. While the updated grievance procedure is applicable in this case, the MDOC grievance form has not been updated since *Jones*. Unless a prisoner reviews the grievance procedure, which is noted to be available in the prison library, there is nothing on the grievance form to alert a prisoner of the requirement to name all those "involved" in the circumstances of his grievance. (*See*, Dkt. 23, Exs. E, F).

facts involving the issue being grieved (i.e., who, what when, where, why, how)"
and that "[d]ates, times, places and names of all those involved in the issue being
grieved are to be included."  After *Jones*, despite the requirement of the updated
MDOC policy directive to name those involved in the issue being grieved, in
many circumstances, a prisoner's failure to specifically name individuals who are
later named in a lawsuit will not be deemed a failure to exhaust.  For example, in
*Grear v. Gelabert*, 2008 WL 474098, *7-8 (W.D. Mich. 2008), the prisoner named
"health care staff" in a grievance.  Prison officials did not, however, reject the
grievance for failure to identify the specific persons about whom he was
complaining.  *Id*. at 8.  The court concluded that, because prison officials did not
rely on this default by rejecting the grievance, the claim was exhausted as to *all*
health care staff, including those named in the lawsuit.  *Id.*  In this case, for
example, plaintiff identified the "nurse practitioner" at OTF in his grievance.
Defendant Marble is a nurse practitioner at this facility and the grievance was not
rejected as vague for failure to identity the "nurse practitioner" by name.

Similarly, in *Cromer v. Braman*, 2008 WL 907468, *3 (W.D. Mich. 2008),
the court similarly concluded that an individual was sufficiently identified where
two of his MDOC co-workers were named in the grievance and the prisoner also
identified "cronies" of the two co-workers as wrongdoers.  The court found that

the third individual was sufficiently identified in the grievance because the defendants offered no evidence "that would require a juror to find that [the third individual] could not possibly be one of the 'staff members' named in plaintiff's grievance." *Id.*; *see also*, *Contor v. Caruso*, 2008 WL 878665, *8 (W.D. Mich. 2008)* (Prison officials cannot rely on the procedural rule barring review of a grievance where the grievance was not rejected at any step of the process for failure to identify specific CMS personnel).

Nothing in *Jones v. Bock* or *Woodford* altered the well-established principle that when the MDOC addresses the merits of a grievance, any claimed procedural defect not raised during the administrative process is waived and cannot form the basis of a failure to exhaust defense. District Judge Paul Maloney recently examined the application of *Jones* and *Woodford* in circumstances where the updated MDOC policy directive governed and the inmate failed to identify all persons later sued in the underlying grievance. *Baker v. Vanderark*, 2007 WL 3244075 (W.D. Mich. 2007). In *Baker*, the MDOC argued that the plaintiff failed to exhaust his administrative remedies with respect to certain individuals who were not named in his grievance, but who were later named in his lawsuit. *Id.* at *6. Judge Maloney distilled the MDOC's argument as follows: "In effect, Defendants argue this Court may conclude a grievant did not exhaust his or her

administrative remedies even if the MDOC addressed the issue on the merits." *Id.* Judge Maloney rejected this argument and concluded that it was inconsistent with the policies underpinning *Woodford*. Under the PLRA and *Woodford*, "both parties are obligated to raise objections in the administrative proceedings in order for the issue to be properly before a reviewing court." *Id.* at *7. If the Court accepted defendants' position, a prisoner would never have notice that his grievance did not comply with § T of the grievance procedure. Further, accepting defendants' position would place the burden of raising an objection only on a prisoner and not on the MDOC. This interpretation is inconsistent with the exhaustion doctrine and the purpose of the PLRA: "[w]hen prison officials fail to raise procedural problems during the grievance process, too many suits make it to federal courts on a record where the procedural problem has not been adequately developed." *Id*. at *7.

Judge Maloney also concluded that a "fair interpretation of PD 03.02.103 gives the Grievance Coordinator discretion to accept or reject a grievance that fails to identify specific defendants on the basis of the grievance being vague." *Id.* Rather than dismissing the grievance on a procedural issue and allowing the prisoner to address any procedural concerns, the MDOC opted to address the grievance on the merits. *Id.* at *7. And, if the MDOC needed additional

information, the policy provides that the interview is the time to gather that information. Judge Maloney concluded that "[b]y accepting the grievance, investigating the claim, and responding on the merits all the way through Step III of the procedure, MDOC cannot now raise a procedural problem for the first time in this Court." *Id.*

Other courts have reached the conclusion that *Woodford* is not controlling because it did not involve a situation where the MDOC addressed a grievance on the merits. *See e.g.,* *Broder v. Correctional Medical Services, Inc.*, 2008 WL 704229, *2 (E.D. Mich 2008) ("Where the prison officials themselves overlook a prisoner's failure to comply with procedural requirements and address the prisoner's grievance on the merits, the procedural default rule established by *Woodford* is inapplicable."); *see also,* *Johnson v. Beardslee*, 2007 WL 2302378 (W.D. Mich. 2007) (finding exhaustion satisfied because MDOC accepted the grievance and addressed it on the merits rather than rejecting it or denying it as untimely). As set forth in the grievance procedure, the MDOC "may" reject a grievance that is either too vague (which includes the failure to name all persons involved) or where an inmate fails to attempt informal resolution with staff. Since the MDOC did not reject the grievances at issue and proceeded to address them on merits, any procedural defect was waived.

The undersigned suggests that the MDOC defendants cannot argue that the requirement of naming all persons a plaintiff may later sue is a "critical procedural requirement" under *Woodford* and also take the position that it need not object to plaintiff's failure to comply with this provision during the grievance process. The MDOC defendants suggest that this is appropriate because it cannot possibly know a plaintiff is later going to sue. This suggestion merely begs the question - is the requirement to name all those involved a "critical procedural" requirement under *Woodford*? If it is not, then a plaintiff need not identify all persons he may later sue. If it is, then the MDOC must object during the administrative process. This does not mean, as the MDOC defendants suggest, that a prisoner may name no one in a grievance and then later successfully maintain suit against any and all MDOC employees. There are obvious and critical restraints on whom a prisoner may pursue in a § 1983 suit. For example, a defendant must either be directly involved in the alleged deprivation, or a defendant could be vicariously liable only where a pattern, practice, or policy of an agency is at issue. As Judge Maloney discussed in detail in *Baker*, the MDOC's position ignores its own policy-based obligations to investigate a grievance after it has been accepted. As held in *Jones v. Bock*, the purpose of the exhaustion doctrine is to provide "fair notice" of the issue being grieved, "not to provide personal notice to a particular official that he

may be sued; the grievance is not a summons and complaint that initiates

adversarial litigation." *Jones*, 127 S.Ct. at 923.  Plaintiff's grievance gave prison

officials "fair notice" of the misconduct alleged and the substance of the complaint

is consistent with what plaintiff stated in his grievance.  *Shoucair v. Warren*, 2008

*WL 2033714, *8 (E.D. Mich. 2008)* ("[O]nce 'fair notice' of the complaint is

provided, the burden is placed on the MDOC to conduct a complete

investigation.").  Thus, the undersigned suggests that exhaustion of both

grievances was sufficient.

     C.    <u>Plaintiff Fails to State a Claim Against CMS</u>.

     In order to state a cause of action under 42 U.S.C. § 1983, two essential

elements are required: (1) there must be conduct committed by a person acting

under color of state law, and (2) the conduct must deprive the plaintiff of rights,

privileges or immunities secured by the Constitution or laws of the United States.

42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527 (1981); *Gomez v. Toledo*, 446

U.S. 635, 640 (1980); *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988).  If

either element is missing, then a claim under § 1983 has not been stated.  *Christy*

*v. Bandlett*, 932 F.2d 502, 504 (6th Cir. 1991).  In the present motion, there is no

challenge to the claim that any of the defendants were acting under color of state

law.

CMS correctly states that a plaintiff bringing an action pursuant to § 1983 may not base liability on a theory of *respondeat superior* or vicarious liability. *Moore v. Michigan Dep't of Corrections*, 2007 WL 3124649, *4 (W.D. Mich. 2007)*, citing, *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 (1978). Rather, under *Monell*, liability can only be found in situations where a deprivation of constitutional rights occurs as a result of an entity's policy, custom, or practice. *Raub v. Correctional Medical Services*, 2008 WL 160611, *2 (E.D. Mich. 2008)*, citing, *Monell*, at 694. Moreover, there must be an "affirmative link between the policy and the particular constitutional violation alleged." *Raub*, at *2, quoting, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "There must be more than merely a right to control employees, as plaintiff must show that CMS at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employees." *Moore*, at *4, citing, *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

CMS claims that plaintiff does not point to a specific "policy" instituted by CMS that plaintiff claims was violated. The undersigned agrees. Even construing plaintiff's complaint indulgently, he has failed to allege that any pattern, policy, or practice of CMS is implicated by his claims. As such, plaintiff's allegations against CMS, at best, merely "create speculation" or a "suspicion" of a legally

cognizable claim and his claims against CMS should be dismissed.  *See, Bredesen and Twombley, supra.*

    C.    <u>Plaintiff Has Sufficiently Stated a Claim Against the Remaining Defendants Except Defendant Van Setters.</u>

As set forth above in detail, plaintiff makes two separate, but related, deliberate indifference claims.  The first arises from the nearly four month delay in providing prescribed the pain medication.  The second claim arises from the failure to perform the physician-recommended surgical correction on plaintiff's hand. All defendants assert that plaintiff fails to state a claim for violation of his Eighth Amendment rights because he merely "disagrees" with the treatment provided.  They essentially argue that, because some treatment was provided, there cannot be "deliberate indifference" as a matter of law.  The undersigned suggests that defendants have overstated the legal constraints placed on Eighth Amendment claims and the requirements for stating such a claim.

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v.*

*Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991). In evaluating plaintiff's complaint for purposes of a motion to dismiss, it is important to emphasize that he need not *prove* his claims at this stage, but rather, his complaint, viewed indulgently, need only have "enough factual matter (taken as true) to *suggest* the required element." *Phillips*, 515 F.3d 224 at 234 (internal quotation marks omitted; emphasis added).

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988). A serious ailment requires immediate attention or is potentially life-threatening: "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation omitted), overruled on other grounds, *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997). The fact that a plaintiff endured unnecessary pain and suffering is

sufficient for an Eighth Amendment claim.  *Id.*  In *Westlake v. Lucas*, the Sixth

Circuit held that "a prisoner who is needlessly allowed to suffer pain when relief is

readily available does have a cause of action against those whose deliberate

indifference is the cause of his suffering."  *Westlake*, 537 F.2d at 859.

Based on these standards, at a minimum, plaintiff has alleged the existence

of a "serious medical need," sufficient to survive a motion to dismiss, given his

allegations of untreated pain from injuries for nearly four months and the failure to

perform the medically-recommended surgery to address his injury and painful

deformity.  Thus, the allegations in plaintiff's complaint, taken as true, satisfy the

first element of *Wilson*.

Defendants also argue that plaintiff's complaint does not satisfy the second

element of *Wilson*, which requires allegations that defendants acted with deliberate

indifference, because, at best, the complaint merely states a case for medical

malpractice.  "Deliberate indifference" has been variously defined by the federal

courts that have considered prisoners' Eighth Amendment claims, but all agree

that it is more than mere negligence and less than actual intent in the form of

"malicious" or "sadistic" action.  *Farmer v. Brennan*, 511 U.S. 825, 861 (1994);

*see also, Estelle*, 429 U.S. at 105-106 (a complaint that a physician has been

negligent in diagnosing or treating a medical condition does not state a valid claim

under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2. A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994), quoting, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (per curiam), cert. denied, 496 U.S. 928 (1990). Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976).

Here, plaintiff has not merely alleged that defendants "negligently" failed to diagnose his condition or treat his symptoms. Rather, plaintiff claims that they delayed in medically-recommended treatment such that he unnecessarily suffered pain and that they knowingly refused to allow the surgery that was recommended by a physician. The allegations in plaintiff's complaint fall within the scope of *Westlake v. Lucas*. Thus, plaintiff's complaint contains allegations sufficient to satisfy the second prong of *Wilson*, so as to survive a Rule 12(b)(6) motion, where such allegations must be liberally construed in his favor.

The MDOC defendants[4] also argue, however, that plaintiff's complaint fails to sufficiently allege their personal involvement, as required for a § 1983 claim. (Dkt. 23, pp. 4-5). They argue that plaintiff's allegations that defendant Hill failed to contact the prison health care clinic about his pain medication, or respond to plaintiff's request for her to do so, is insufficient to state a claim. *Id.* Again, bearing in mind that this is a motion to dismiss, not a motion for summary judgment, a plaintiff may establish the subjective factor in several ways. As the

---

[4] Unlike the MDOC defendants, defendant Marble does not argue that the complaint fails to sufficiently allege that she was personally involved in plaintiff's medical care. (Dkt. 18). Rather, her argument is limited to whether plaintiff merely states a claim for negligence or malpractice or whether his claims rise to the level of a constitutional deprivation. *Id.*

Supreme Court has explained, whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted). In this case, plaintiff alleges that his finger was injured and obviously deformed (which means it was presumably visible in some way) and that he personally complained to defendant Hill that he had not received his prescribed pain medication. Taking these allegations as true and liberally construing them in plaintiff's favor, the undersigned suggests that plaintiff has satisfied the thresholds of Rules 12(b)(6) and 8(a) as to defendant Hill.

Defendant Van Setters also argues that plaintiff fails to state a claim against her because she had no involvement in plaintiff's care and merely authored the Step II grievance response. (Dkt. 23, pp. 4-5). It is generally true that where a defendant's "only role[] ... involve[s] the denial of administrative grievances or the failure to act ... [he or she] cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). However, if a defendant is a medical professional reviewing a recommendation for care made by other medical professionals, the result may be different. *See e.g., Titlow v. Correctional Medical Services*, 2008

WL 2697306, *12 (E.D. Mich. 2008) ("However, [the] *Shehee* defendants were not medical professionals reviewing the recommendations of other medical professionals."). In this case, it is unclear whether defendant Setters is a medical professional, however, according to the grievance procedure, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. (Dkt. 23, Ex. D, p. 5, § FF). Given this provision and that her title is "Reg. II AHA," it appears that defendant Van Setters is, at a minimum, the designee of the "Regional Health Administrator." (Dkt. 23, Ex. F). As such, where plaintiff claims that defendant Van Setters was obligated to ensure that he received proper medical treatment and she failed to do so, she may fall into the category of prison officials who can be "held liable if *they fail to take corrective action*, turn a blind-eye to a constitutional violation, or condone a policy and/or practice that amounts to a constitutional violation." *Harman v. Bell, 2008 WL 606998, *2 (E.D. Ark. 2008)* (emphasis added), citing, *Ambrose v. Young, 474 F.3d 1070, 1079 (8th Cir. 2007)*; *Johnson v. Blaukat, 453 F.3d 1108 (8th Cir. 2006)*; *Brown v. Missouri Dep't of Corr., 353 F.3d 1038, 1040 (8th Cir. 2004)*.

  This issue is further complicated, however, by the missing page of plaintiff's complaint. The undersigned suspects that the allegations against

defendant Van Setters were set forth on the page of plaintiff's complaint that is missing and which has not been resubmitted to the Court, despite two requests for plaintiff to do so. Strictly speaking, there are *no* specific allegations made against defendant Van Setters in the body of the complaint. The MDOC defendants speculate that the basis of plaintiff's claims against defendant Van Setters rest on her authorship of the Step II grievance response, which is attached to the complaint. The undersigned further suggests, despite the above analysis, and even reading plaintiff's complaint very liberally, that plaintiff has failed to state a claim against defendant Van Setters. The undersigned further suggests that, should the District Court agree with this conclusion and with the suggestion that plaintiff might be able to state a claim against defendant Van Setters, plaintiff should be permitted an opportunity to formally amend his complaint in this limited respect. *See e.g., Friedmann v. Campbell*, 1999 WL 1045281, *1 (6th Cir. 1999), citing, *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) ("The court has a responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that the *pro se* litigant would be able to state a meritorious claim" and it is "incumbent on the court to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds.").

D.  <u>Immunity</u>

The MDOC defendants argue that they are entitled to Eleventh Amendment immunity because a "suit against a state employee in his official capacity is tantamount to a suit against the state itself and must be dismissed on the basis of Eleventh Amendment immunity."  (Dkt. 23, p. 7, citing, *Brandon v. Holt*, 469 U.S. 464 (1985)).  Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). Although plaintiff's complaint does not specify the capacity in which the MDOC defendants are sued, to the extent that any allegations could be read to assert claims against the MDOC defendants in their official capacity, the undersigned agrees that the MDOC defendants are immune from suit.

The MDOC defendants also assert that they have qualified immunity because plaintiff has not shown "that his constitutional rights have been violated" and because the MDOC defendants "did not act unreasonably" in that defendant Hill "forwarded Plaintiff's inquiry to health care"[5] and defendant Van Setters "merely responded to a grievance at step two."  (Dkt. 23, p. 8).  The Supreme

---

[5]  Defendant Hill has not offered any evidence that she did so.

Court has explained that the defense of qualified immunity involves situations where "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To determine whether an official is entitled to qualified immunity, the Sixth Circuit follows the two-part test set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001):

> First we must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."

*Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002), quoting, *Saucier*, 533 U.S. at 201 (internal citations omitted). Thus, the threshold question for the Court in deciding whether a defendant has qualified immunity is whether "in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201

(2001); *see also, Charvat v. E. Oh. Reg'l Wastewater Auth.*, 246 F.3d 607, 616 (6th Cir. 2001) ("First, the court must ask whether the plaintiff in the civil action has demonstrated the violation of a constitutionally protected right.").

As set forth above, the undersigned has concluded that dismissal is not appropriate at this time on the issue of whether plaintiff suffered a constitutional deprivation. Therefore, a constitutional violation could be made out, viewing the parties' submissions in a light that is favorable to plaintiff. Even if the MDOC defendants have committed a constitutional violation, they could still be entitled to qualified immunity if the right at issue was not "clearly established" at the time of the violation. The MDOC defendants do not, however, address the second prong of the *Saucier* test in their motion to dismiss. Thus, they have provided no basis for the Court to decide this issue in their favor and the Court need not reach the second prong of the analysis.

## IV. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that all defendants' motions to dismiss and/or for summary judgment on the issue of exhaustion be **DENIED**; that defendant CMS's motion to dismiss for failure to state a claim be **GRANTED**; and that defendant Marble's motion to dismiss for failure to state a claim be **DENIED**; that defendant Hill's motion to dismiss for failure to state a

claim be **DENIED**; that defendant Van Setter's motion to dismiss for failure to state a claim be **GRANTED**; and that plaintiff should be permitted an opportunity to **AMEND** his complaint as to defendant Van Setters.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not exceed 20 pages in length unless such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the

objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Date: August 19, 2008                           s/Michael Hluchaniuk
                                                Michael Hluchaniuk
                                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Ronald W. Chapman, Clifton B. Schneider, and Carly A. Van Thomme, and I hereby certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following addresses: Willie Calhoun, # 315974, CAMP CUSINO, N5398 Percy Road, Shingleton, MI 49884, and Willie Calhoun, # 315974, MARQUETTE CORRECTIONAL FACILITY, 1960 U.S. Hwy. 41 South, Marquette, MI 49855.*

*The court docket reflects that the plaintiff's address is the Camp Cusino Correctional Facility. However, a check with the Michigan Department of Corrections prisoner tracking system indicates that the plaintiff is currently located at the Marquette Correctional Facility.

                                                s/James P. Peltier
                                                Courtroom Deputy Clerk
                                                U.S. District Court
                                                600 Church Street
                                                Flint, MI 48502
                                                (810) 341-7850
                                                pete_peltier@mied.uscourts.gov